UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 26 Cr. ___ |
| CHARLES COLE, | |
| Defendant. | 26 CRIM 0242 |

## COUNT ONE
### (Wire Fraud)

The Grand Jury charges:

1.      From at least in or about June 2024 through in or about March 2026, CHARLES COLE, the defendant, perpetrated a scheme to fraudulently obtain at least 239 million shares from Infinite Reality, Inc. ("Infinite Reality"), now known as Napster, which he then used as collateral to induce financial institutions to lend him money. As part of that scheme, COLE, and others acting at his direction, repeatedly lied to Infinite Reality about his ability to pay for the shares—fabricating bank records, creating sham correspondence, and establishing a fake website to mirror that of a foreign bank—to deceive Infinite Reality into believing that COLE had billions of dollars that he was prepared to invest in the company. Based on those misrepresentations, Infinite Reality issued shares to COLE and entities he controlled. But COLE, who had no intention of paying for the shares, never invested in Infinite Reality. Instead, he used his fraudulently obtained shares as collateral to obtain or try to obtain loans from third parties, fabricated bank records to acquire still more shares of Infinite Reality based on further misrepresentations, and persisted in his efforts to deceive Infinite Reality until it ultimately rescinded the shares it had issued to COLE and his entities.

COLE Defrauds Infinite Reality to Obtain the Company's Shares

2.    Infinite Reality is a Florida-based technology company that advertises itself as specializing in applications of spatial computing, extended reality, and artificial intelligence. Infinite Reality has raised capital through private placement offerings to outside investors.

3.    Beginning in or around mid-2024, Infinite Reality sought to raise approximately $350 million in new finance and engaged a Long Island-based broker dealer ("Broker-1") to help identify prospective investors. In or around August 2024, Broker-1 introduced Infinite Reality to CHARLES COLE, the defendant, and certain of his associates as individuals who supposedly could facilitate an investment in Infinite Reality. COLE and his associates initially proposed transferring a $1 billion bond—purportedly held by a company in which COLE previously had a membership interest—to Infinite Reality as consideration for $350 million in Infinite Reality's shares.  In or about August 2024, Infinite Reality collected the bond in Manhattan, New York.

4.    In the weeks that followed, CHARLES COLE, the defendant, made various efforts to try to monetize the bond, all of which proved unsuccessful. COLE then told Infinite Reality that he was interested in acquiring billions of dollars' worth of Infinite Reality's shares through direct investment, and provided Infinite Reality with false information about his access to capital to fund such a transaction. Among other things, COLE submitted a document to Infinite Reality that falsely listed a yearly income of $50 million and net worth of $800 million, and another document, signed under penalty of perjury, falsely claiming that he had $33 billion available for his proposed investments in Infinite Reality. Based on COLE's misrepresentations, on or about September 4, 2024, COLE and Infinite Reality entered into a subscription agreement wherein COLE agreed to purchase approximately 45 million shares of Infinite Reality for $500 million.

5.    CHARLES COLE, the defendant, continued his fraudulent scheme to acquire more shares of Infinite Reality through lies and fabricated documents designed to create the false

impression that he had access to billions of dollars. For example, to deceive Infinite Reality into believing he had billions of dollars at a foreign bank, COLE fabricated a bank confirmation letter bearing the letterhead and purported signature of the founder of a foreign financial institution based in Sweden ("Foreign Bank-1"), falsely stating that COLE's entity, Avranoc, LLC ("Avranoc"), "has been a client in good standing with us" and had €49 billion of "immediately spendable cash" in its account at Foreign Bank-1. In truth, COLE had no money at Foreign Bank-1. On September 25, 2024, shortly after COLE sent the fabricated bank confirmation letter to Infinite Reality, COLE executed a subscription agreement wherein Beacon Heart LLC, a company COLE owned and controlled, agreed to purchase approximately 45 million shares of Infinite Reality for $350 million. Then, on or about September 27, 2024, COLE executed a second subscription agreement with Infinite Reality wherein Heart of Humanity LLC, a second company COLE owned and controlled, agreed to purchase a to-be-determined number of Infinite Reality shares in exchange for a bond in the amount of $2.5 billion.

6.    CHARLES COLE, the defendant, had no intention of paying Infinite Reality any of the money owed under the September 2024 subscription agreements and, in fact, did not pay as promised. When Infinite Reality executives pressed COLE about the overdue payments, COLE responded with a series of false excuses as to why the money had not been transferred. To sustain the deception, COLE convinced Infinite Reality that he held billions of dollars at another foreign bank based in Malaysia ("Foreign Bank-2") and had opened an account in Infinite Reality's name to hold the funds. In furtherance of that false claim, COLE and his coconspirators drafted fake confirmation letters purportedly from Foreign Bank-2 and caused them to be transmitted to Infinite Reality. The first, sent on or about November 9, 2024, falsely claimed that COLE and Avranoc had over $11 billion available at Foreign Bank-2 and that COLE was "Ready Willing and Able to fully fund the transfer of **$3,360,000,000.00 . . . as soon as Monday November 11th, 2024." A

3

second letter followed less than one week later, claiming that COLE had approximately $9 billion at Foreign Bank-2 following two transfers of approximately $860 million, that one transfer directed to Infinite Reality was temporarily on hold "following routine server maintenance and upgrades," and that Foreign Bank-2 was opening an account for Infinite Reality to receive the funds.

7.     The account at Foreign Bank-2, however, was a fiction. Unbeknownst to Infinite Reality, CHARLES COLE, the defendant, and his coconspirator had established offshore servers to host a fake website that mirrored the actual website of Foreign Bank-2 and permitted users with approved credentials to "log in" to fabricated accounts. COLE repeatedly asked a coconspirator about the status of the servers, asking whether the server with the Foreign Bank-2 "mirror" was "up and running so that we can add an account" and go "live." Once the fake website was operational, COLE caused Infinite Reality to receive a fake welcome email—drafted by COLE and sent from a fake Foreign Bank-2 administrative account—with a link to Infinite Reality's purported new account. Executives from Infinite Reality logged in and observed what appeared to be a funded account. The deception worked. On or about November 20, 2024, COLE and Infinite Reality executed an amendment to the Heart of Humanity subscription agreement under which Heart of Humanity agreed to purchase approximately 98 million additional Infinite Reality shares for $1.65 billion. Approximately one month later, Infinite Reality, believing COLE had funded its Foreign Bank-2 account, issued the shares contemplated by all outstanding subscription agreements.

<u>COLE Attempts to Monetize the Fraudulently Obtained Shares</u>

8.     Having induced Infinite Reality to issue the shares, CHARLES COLE, the defendant, and others acting at his direction, continued the fraud by stringing Infinite Reality along with additional false assurances about outstanding payments due while simultaneously attempting

4

to profit from the fraudulently obtained shares.

9. After fabricating the initial Foreign Bank-2 account balance, CHARLES COLE, the defendant, and his coconspirators continued transmitting fake bank correspondence to Infinite Reality. For example, on or about February 14, 2025, a coconspirator posing as a representative of Foreign Bank-2 sent Infinite Reality a fabricated "Confirmation of Funds" letter falsely stating that Foreign Bank-2 held $2.5 billion in an account for Infinite Reality. A few days later, COLE himself emailed Infinite Reality executives falsely claiming that he had transferred $2.5 billion to Infinite Reality's account at Foreign Bank-2 and that "[a]n additional 860 million USD [was] in process for deposit" with $100 million "scheduled for release later today." None of that was true. Based on these and prior misrepresentations, Infinite Reality executed another subscription agreement on or about March 10, 2025, pursuant to which Heart of Humanity agreed to purchase approximately 51 million additional shares for $860 million.

10. At the same time, CHARLES COLE, the defendant, took steps to monetize his fraudulently obtained shares. In or around March 2025, COLE unsuccessfully attempted to obtain a line of credit from a U.S. financial institution ("U.S. Bank-1"), offering to pledge his shares of Infinite Reality as collateral while misrepresenting that he had substantial wealth overseas. On or about May 2, 2025, based on similar misrepresentations, another U.S.-based financial institution ("U.S. Lender-1"), loaned $1 million to Beacon Heart against approximately $45 million of the fraudulently obtained shares. The proceeds were deposited into an IOLTA account held by COLE's then-attorney, from which approximately $552,000 was subsequently wired to COLE's bank account in Manhattan. COLE withdrew approximately $280,000 and wired the remainder to other individuals, including coconspirators.

<u>COLE Continued to Try to Acquire More Shares of Infinite Reality</u>

11. Even as Infinite Reality pressed him for outstanding payments due, CHARLES

COLE, the defendant, moved to acquire more Infinite Reality shares. On or about May 15, 2025, COLE signed a letter of intent to purchase additional Infinite Reality shares through a tender offer. When Infinite Reality, through its counsel, demanded proof that COLE was in fact transferring the funds to pay for the previously issued shares and had the money to back his proposed tender offer, COLE fabricated additional records purporting to show his ability to pay for the shares. For example, COLE transmitted to Infinite Reality's counsel a screenshot purporting to show a balance of over $11 billion in a U.S. Bank-1 account that did not exist. For further example, COLE told Infinite Reality executives that he had moved funds to another U.S. financial institution ("U.S. Bank-2") that was preparing to process the $3.36 billion payment when, in truth, he had made no such arrangements. Meanwhile, COLE took care to ensure his fictitious paper trail held together, personally directing a coconspirator to fix mismatched account number formatting on fabricated statements so the documents would "match all the others."

12. Throughout 2025, executives at Infinite Reality continued to press CHARLES COLE, the defendant, for payment for the shares that Infinite Reality had previously issued, and COLE continued to offer false explanations and new agreements intended to prevent Infinite Reality from attempting to rescind the shares. COLE, however, never transferred any funds. The scheme ultimately unraveled in March 2026 when Infinite Reality rescinded all the shares it previously issued to COLE and his entities.

Statutory Allegations

13. From at least in or about June 2024, up to and including in or about March 2026, in the Southern District of New York and elsewhere, CHARLES COLE, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate

and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, COLE devised and participated in a scheme to obtain money and property by providing false and misleading representations and promises, including through the use of interstate wires, to induce Infinite Reality to sell and transfer at least 239 million of the company's shares to COLE and his entities and then using the shares to induce U.S. Bank-1 and U.S. Lender-1 to lend money.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT TWO
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

14.    The allegations contained in paragraphs 1 through 12 of this Indictment are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

15.    From at least in or about June 2024, up to and including in or about March 2026, in the Southern District of New York and elsewhere, CHARLES COLE, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

16.    It was a part and an object of the conspiracy that CHARLES COLE, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, COLE agreed with others to devise

and participate in a scheme to obtain money and property by providing false and misleading representations and promises, including through the use of interstate wires, to induce Infinite Reality to sell and transfer at least 239 million of the company's shares to COLE and his entities, and then using the shares to induce U.S. Bank-1 and U.S. Lender-1 to lend money.

(Title 18, United States Code, Section 1349.)

### Count Three
### (Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 12 of this Indictment are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

18. From at least in or about June 2024, up to and including in or about March 2026, in the Southern District of New York and elsewhere, CHARLES COLE, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

19. It was a part and an object of the conspiracy that CHARLES COLE, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of a means and an instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security registered on a national securities exchange and a security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in

8

order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, COLE agreed with others to devise and participate in a scheme to obtain money and property by providing false and misleading representations and promises, including through the use of interstate wires, to induce Infinite Reality to sell and transfer at least 239 million of the company's shares to COLE and his entities.

Overt Acts

20.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed and caused to be committed in the Southern District of New York and elsewhere:

a.    In or about August 2024, coconspirators of CHARLES COLE, the defendant, arranged to have Infinite Reality come to Manhattan, New York to collect the bond that was purportedly worth $1 billion and used as consideration for the agreement to obtain $350 million of Infinite Reality's shares.

b.    In or about November 2024, CHARLES COLE, the defendant, and others acting at his direction, created and transmitted fake bank records and correspondence to executives of Infinite Reality that claimed that COLE had billions of dollars in an account at Foreign Bank-2 and that COLE had directed the transfer of $3.36 billion.

c.    In or about November 2024, CHARLES COLE, the defendant, worked with a coconspirator to create a website portal that was made to look like that of Foreign Bank-2 and which purported to show that Infinite Reality had billions of dollars in an account at Foreign Bank-2.

d.    In or about May 2025, CHARLES COLE, the defendant, pledged his

9

fraudulently obtained shares of Infinite Reality as collateral for a loan, and caused proceeds of that loan to be transmitted to his bank account in the Southern District of New York.

## FORFEITURE ALLEGATIONS

21.     As a result of committing the offenses alleged in Counts One, Two, and Three of this Indictment, CHARLES COLE, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Assets Provision

22.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
Grand Jury Foreperson

JAY CLAYTON
United States Attorney

10